ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

JAMES G. WARWICK
Assistant U.S. Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
Telephone: (410) 209-4860
Telecopier: (410) 962-3124
Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
SEP 28 2006
MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THIRUNAVUKARASU ) <br> VARATHARASA, ) <br> ) <br> Defendant. ) | CRIMINAL CASE NO. 06-00043 <br><br> **COMPLAINT** <br><br> **CONSPIRACY TO EXPORT DEFENSE ARTICLES** <br> [18 U.S.C. § 371 and 22 U.S.C. § 2778] |

THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

### The Export and Import of Defense Articles

1. The export from, and import into, the United States of arms, munitions, and items manufactured for military use, and the technology to build such items, is strictly controlled by statutes and regulations.

2. The Arms Export Control Act, Title 22, United States Code, Section 2778, and the International Traffic in Arms Regulations (the "ITAR"), Title 22, Code of Federal Regulations, Part 120, authorize the United States Department of State's Directorate of Defense Trade Controls ("the DDTC") to establish the United States Munitions List ("the Munitions List").

3. The Munitions List is a catalog of designated "defense articles" which are subject to export and certain import restrictions. Any person who intends to export, or import temporarily, defense articles on the Munitions List from or into the United States is required to first obtain a license from the DDTC. An applicant for an export or temporary import license from the Department of State must identify in the required license application the ultimate and final destination of the goods, which in the trade is referred to as the "end user."

4. Included on the Munitions List are assorted classifications of conventional weapons, ammunition as well as components designed and manufactured for use by the military.

5. The export of any Munitions List item to the Democratic Socialist Republic of Sri Lanka requires a license from the DDTC.

6. At all times material to this Complaint, the P90 5.7x28mm triple rail machine gun; Five-Seven 5.7x28 pistol; MP7 machine gun; H & K Model 69 40mm grenade launcher; M16A4 5.56mm machine gun; M40A3 7.62 Sniper rifle; Stinger shoulder fired surface to air missiles; and Model F7201 PVS-14 Generation 3 night vision goggles were all articles on the Munitions List and cannot be legally exported from the United States without a license from the DDTC.

COMPLAINANT FURTHER STATES:

7. I, John C. Burgess, being a Special Agent with the U.S. Immigration and Customs Enforcement (ICE) of the Department of Homeland Security, state that ICE maintains an undercover business in the United States for the purpose of investigating possible violations of the Arms Export Control Act. I am assigned to the Baltimore, Maryland office, and acting in my official capacity, set forth the following:

## The Conspiracy to Violate the Arms Export Control Act

8. From in or about April of 2006 through the date of this Complaint, in the United States Territory of Guam, the District of Maryland, the Republic of Indonesia, the Democratic Socialist Republic of Sri Lanka and elsewhere, **THIRUNAVUKARASU VARATHARASA** the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with

2

other persons, to commit offenses against the United States, that is, to export, and temporarily import, defense articles listed on the Munitions List without the required license, contrary to Title 22, United States Code, § 2778 and 18 U.S.C. Section 371.

### The Object of the Conspiracy

9. The object of the conspiracy was to enrich the defendant and his co-conspirators by shipping Munitions List items to customers in the Democratic Socialist Republic of Sri Lanka without obtaining the appropriate license from the United States Department of State, Directorate of Defense Trade Controls, in violation of the Arms Export Control Act.

### The Manner and Means of the Conspiracy

10. It was part of the conspiracy for the defendant and his co-conspirators to act as brokers and middlemen between manufacturers and distributors of technology produced for military use and to military specifications, and purchasers of such technology. The purchasers, or "end users," of this technology were individuals and/or entities located within the Democratic Socialist Republic of Sri Lanka.

### Overt Acts

11. In April of 2006 **Haji Subandi**, who has been separately charged by Indictment from the District of Maryland[1], indicated to undercover officers that he had a customer in the Democratic Socialist Republic of Sri Lanka who wished to purchase large quantities of conventional arms and munitions. He identified this customer as the Liberation Tigers of Tamil Eelam (LTTE). **Subandi** understood that the transfer of these weapons and munitions was illegal without licenses being first obtained from the DDTC.

12. In May of 2006 **Haji Subandi** contacted the undercover business and identified **Haniffa Bin Osman** and **Erick Wotulo** as representatives of the LTTE who were willing to

---

[1] Subandi, Haniffa Bin Osman and Erick Wotulo are charged under a sealed indictment with conspiracy to exports arms and munitions, conspiracy to provide material support to a designated foreign terrorist organization, and money laundering. **Thirunavukarasu Varatharasa** is charged herein with being a member of said conspiracy. A copy of the Maryland Indictment is available for inspection by this Court.

3

travel to the United States to meet with undercover agents in order to facilitate the proposed arms transaction. **Subandi** subsequently sought pricing information for assorted types of machine guns, automatic weapons and grenade launchers on behalf of the LTTE.

13. On or about July 26, 2006 **Haniffa Bin Osman** traveled to Maryland to meet with undercover officers to further the purchase of the weaponry. On July 28, 2006 **Osman** test-fired several of the weapons, including machine guns and sniper rifles, which he sought to secure for the LTTE. While in Maryland, **Osman** told undercover officers that **Thirunavukarasa Varatharasa** would inspect the weaponry before it would be accepted by the LTTE.

14. On or about August 2, 2006 an international wire transfer from a bank in Kuala Lumpur, Malaysia in the amount of $250,000.00, was credited to an account maintained by the undercover business in Maryland. This transfer was a down payment for an order of weaponry which was invoiced by the undercover business at approximately $900,000.00. **Haniffa Bin Osman** stated to undercover officers that the funds had been transferred by a business which had ties to the LTTE.

15. On or about August 5, 2006 **Haniffa Bin Osman** provided undercover officers with passports in his name and in the name of **Thirunavukarasa Varatharasa** in preparation for their travel to the Northern Mariana Islands and/or Guam to accept delivery of the weapons destined for the LTTE.

16. On September 25, 2006 **Haniffa Bin Osman** and **Thirunavukarasa Varatharasa** arrived in Saipan to accept delivery of the weapons. They were subsequently transported to the United States Territory of Guam to inspect the weapons. They met with undercover officers in Guam and discussed the weapons as well as the methods by which the weaponry would be shipped from Guam and then off-loaded by LTTE members at a destination in the Indian Ocean.

17. On September 26, 2006 **Haniffa Bin Osman** and **Thirunavukarasa Varatharasa** inspected at a location in Guam the various machine guns, sniper rifles and ammunition which had been ordered for the LTTE. **Thirunavukarasa Varatharasa** closely examined the weapons

4

and separated some weapons into their component parts. **Haniffa Bin Osman** and **Thirunavukarasa Varatharasa** then agreed to take steps to have additional funds in the amount of $450,000.00 transferred to an undercover bank account as further payment for the weapons.

18. Based on the foregoing, I believe that there exists probable cause to believe that **Thirunavukarasa Varatharasa** has committed the offense of Conspiracy to Violate the Arms Export Control Act contrary to Title 22, United States Code, Section 2778 and Title 18, United States Code, Section 371.

JOHN C. BURGESS
Special Agent
Bureau of Immigration &
Customs Enforcement

SUBSCRIBED AND SWORN to before me this 28th day of September, 2006.

JOAQUIN V.E. MANIBUSAN, JR.
U.S. Magistrate Judge
District of Guam

5